## No. 39.—Robert Collins, plaintiff in error, *vs.* Winifred Lester, defendant in error.

[1.] The principal is plain and familiar, that all oral negotiations, conversations and agreements between the parties to a written contract, and in relation thereto, which precede or accompany the execution of the instrument, must be treated as merged in *it.* But where there is strong presumptive evidence, that subsequently to the execution of a written contract, the parties agreed, orally, upon a new contract, which was a modification of the former, testimony may be received of negotiations and conversations between these parties, previous to the written contract, for the purpose of throwing light upon, and showing more clearly, the nature and character of the subsequent agreement.

[2.] Nothing is better settled, than that the case of an agent falls within a class which forms one of the special exceptions to the general rule, that a witness, interested in the subject of the suit, is not competent to testify on the side of his interest. And this exception extends, in principle, to every species of agency or intervention by which business is transacted; unless the case is overborne by some other rule.

. · Case in Bibb Superior Court.    Tried before Judge STARKE, May Term, 1854.

This was an action on the case, brought by the defendant in error, against the plaintiff, for the recovery of the value of a negro slave named Tom.

On the trial, plaintiff offered in evidence the testimony of Robert B. Lester, taken by interrogatories, in substance, as follows:  "That in the year 1852, at the request of defendant, he hired for defendant, two of the negroes, Isaac and Robin, belonging to the estate of Benjamin L. Lester, of Baldwin County; and before they were delivered to defendant, he exchanged one of them with the plaintiff, for a boy named Tom, who, she said, was hard to manage.    When witness delivered the two boys, Robin and Tom, to the defendant, he expressed himself satisfied with the arrangement.    Witness delivered the negroes to defendant, in Macon, in January, 1852, with the *distinct understanding* that the negroes were to work, either on the South-western Rail-road or Muscogee Rail-road.    In August or September, 1852, defendant informed witness that the grading on the Muscogee road was completed; and asked witness to consent that he might take Tom to Brunswick ; witness refused to give his consent.    Defendant then said that he would put him to work on the South-western Road.    In a few days, defendant told witness that Tom had gone with the overseer and hands to Brunswick ; and in a few days after they arrived at Brunswick, Tom was taken sick and died.    Plaintiff's consent for Tom to go to Brunswick was never asked, save through witness, and he refused, knowing that she would be unwilling for him to go.    There was a statement, in writing, that the defendant had hired these two boys, Robin and Tom—the price at which he had hired them—the number of suits of clothes the defendant was to furnish them, and the time the hire was to be paid; and that he hired them from me".

Counsel for defendant objected to the testimony, and read to the Court another set of interrogatories and answers, for the

same witness, taken by the defendant, in substance, as follows: " I have looked upon the instrument attached to the interrogatories, to wit:"

"MACON, JANUARY 2D, 1852.

We acknowledge to have hired from Robert B. Lester, two negro fellows, Tom and Robin, and we promise to pay for Tom one hundred and twenty-five dollars, and for Robin, one hundred and fifty dollars; time of hire to expire on the 24th December next; and we promise to furnish said negroes the usual food and clothing, and to pay Doctor's bills, in ordinary sickness—said hire to be paid quarterly.

ROBERT COLLINS".

It is so much of the contract of hiring, as was reduced to writing; but does not contain that part relating to how and where the boys were to be employed. The instrument was not drafted at the time of the hiring, for the hiring occurred in December, 1851, and the instrument was drafted in January, 1852. There was no other written contract".

The Court over-ruled the objection, and allowed the answers to the first set of interrogatories, to be read to the Jury; and Counsel for defendant excepted.

Plaintiff then proved by Robert A. Smith, that Brunswick was not on the South-western or Muscogee Road, but was at a distance from both roads, in Glynn County, some two or three hundred miles, and closed.

The defendant then read in evidence the interrogatories and answers, taken out by him, for Robert B. Lester, and the instrument thereto attached.

The Court charged the Jury, " that if they believed, from the evidence, that there was a contract between plaintiff, or her agent, and defendant, that said negro Tom should work during the year 1852, on the South-western or on the Muscogee Rail-road only, and that defendant carried the negro Tom, without the consent of the plaintiff, to Brunswick, where said negro died, then they should find for the plaintiff".

To which charge, Counsel for defendant excepted; and upon these exceptions has assigned error.

COLE and SMITH, for plaintiff in error.

STUBBS & HILL, for defendant in error.

*By the Court.*—STARNES, J. delivering the opinion.

[1.] The question first to be considered, relates to the admission, in evidence, of the oral understanding stated by the witness, Robert B. Lester, to have been made with him as agent for the defendant in error.

The principle is plain and familiar, that all oral negotiations, conversations and agreements between the parties to a written contract, in relation to the subject matter thereof, which precede or accompany the instrument, must be treated as merged in it; and the latter is to be received as the sole evidence of what was agreed upon or contracted by the parties.

It is our opinion, however, that this principle did not operate to exclude the oral agreement testified to by Lester, notwithstanding the subsequent execution of the instrument which was in evidence. The date of that instrument was the 2d day of January, 1852, and the witness proves that sometime in August or September following, the plaintiff in error informed witness, that the grading on the Muscogee Rail-road was finished, and asked his consent, as agent for the defendant in error, that he should be allowed to take the slave Tom to Brunswick; which request was refused. He also swears, that the plaintiff in error then said, that he would put Tom to repairing the track of the South-western Rail-road, and that in a few days thereafter, he came to the witness and told him that he had not sent the slave to work on the said road; but that he had gone off with the overseer and hands to Brunswick. In another place, the witness represents the plaintiff in error, as saying, that the overseer had carried Tom with him, without his consent.

If we analyze this evidence, we will find it showing these things : 1. That the plaintiff in error had asked the consent of the witness, as agent of the defendant in error, to the removal of Tom from the Muscogee Rail-road to Brunswick.  And it seems fair to infer that he would not have asked such consent, if there had been a general contract of hiring between them, and not a contract restricting the employment of the slave, in whole or in part, to this Road.   2. That the plaintiff in error quietly acquiesced, when such consent was refused, and said he would put Tom to work on the track of the South W. Rail-road, by which, the conclusion is authorized, that the slave was not hired generally, but with reference to employment, at least in part, on the Road last mentioned.   3. That in a few days after, the plaintiff in error went to  the witness, and announced that Tom had gone off with the overseer and hands to Brunswick, and said that the overseer had carried him off without his consent. Which latter fact seems to justify the inference, that there was something wrong in this removal of the slave, or the plaintiff in error would not thus have sought the witness and apologized for it, as it were ; and indeed, that if he had hired the slave in a way which would have given him the right to remove him to Brunswick, he would not have withheld his consent that the overseer should remove him.

These things, all taken together, afford presumptive evidence, so strong as not to be resisted, that the parties had, at some time previous to August or September, 1852, entered into an agreement, to the effect, that the slave Tom was not to be employed by the plaintiff in error, wheresoever he might choose to to take him ; but that he was hired to work on the two Rail-roads specified.   Such restricted agreement, however, was not in the written instrument ; and by legal intendment, it could not have been made before, or at the time of the execution of that instrument, because it would have been extinguished by the latter. It must, then, have been entered into subsequently.

Regarding such subsequent contract, as being thus presumptively shown to have been orally made, this testimony of the verbal negotiations, previous to the date of the writing, was

proper for the Jury, as serving to throw light upon the nature and character of the subsequent understanding : and the same were in aid of the strong presumptive evidence which has been just detailed.   Not as proving that such oral agreement was made and entered into, before or at the time of the execution of the instrument, but as serving, by a detail of preliminary negotiations, to show, more clearly, what must have been the subsequent agreement otherwise proven to have been made.

Whatever, therefore, may have been the reasons of the Court below, for the admission of this testimony, in this point of view, it went properly to the Jury.

[2.] The next and only other question presented for our consideration, by the Counsel for the plaintiff in error, was the competency of this witness to prove that he entered into the contract, as agent for the defendant in error.

Nothing is better settled, than that the cases of agents, carriers, factors, brokers, and other servants of this description, in consideration of public convenience and necessity of trade and commerce, and to prevent a failure of justice, constitute a class of special exceptions to the general rule, that a witness, interested in the subject of the suit, or in the record, is not competent to testify on the side of his interest.   (*Bull. N. P.* 289. *Matthews vs. Heydon,* 2 *Esp.* 509.   *Poth. on Obl. by Evans,* App. *No.* 16, *p.* 208, 267.   1 *Phil. Ev.* 140.   1 *Stark. Ev.* 113.   1 *Greenlf. Sec.* 416.)

And this extends, in principle, to every species of agency or intervention by which business is transacted, unless the case is overborne by some other rule.   (1 *Greenlf. Ev.-Sec.* 416.)

Judgment affirmed.