## SCALES *v.* FAULKNER.
## WALKER *et al. v.* QUILLIAN *et al.*

1. Where an election is held for a municipal office in the town of Belton and a contest properly instituted, no certificate of election being issued to either of the candidates, the old incumbent holds over until such certificate has been issued or until the contest has been decided, and he can not be removed from office on quo warranto proceedings instituted by the candidate who, according to the face of the returns, received the highest number of votes, although such candidate has taken the oath of office.

2. Where the answer of the respondent alleges that a contest has been filed with the officer having jurisdiction of such a proceeding and that the same has been duly served, this part of the answer should not be stricken on demurrer or motion on the ground that it is insufficient in that copies of the papers in the contest proceeding are not attached.

Argued May 4, — Decided June 1, 1903.

Quo warranto. Before Judge Kimsey. Hall superior court. March 9, 1903.

*William F. Findley* and *Spencer R. Atkinson,* for plaintiffs.
*Fletcher M. Johnson* and *Edward Quillian,* for defendants.

SIMMONS, C. J. On December 9, 1902, an election for mayor and five councilmen was held in the town of Belton, Georgia. On the face of the returns R. L. Scales appeared to have received a majority of the votes cast for mayor. The opposing candidate instituted a statutory contest before the ordinary of one of the counties in which Belton is situated. The managers of election, having

been notified that such a contest would be instituted, refused to issue any certificate of election. Scales duly qualified by taking the oath required by the charter of the town, and demanded the office of Faulkner, who had been elected at the preceding election and had served his term thereunder. Faulkner declined to surrender the office and continues to hold it, claiming authority to do so under the provision of the town charter that the mayor shall hold office for one year and until his successor is elected and qualifies. Scales thereupon applied to the superior court for leave to file proceedings in the nature of a quo warranto against Faulkner, the present incumbent. The application alleged the holding of the election, that the applicant had received the highest number of votes cast, that he had taken the oath, and that the respondent refused to comply with his demand for the books etc. of the town, but continues to discharge the duties of the office. In response, the present incumbent denied that the applicant had received the highest number of the legal votes cast, stated on information and belief that the applicant had not taken the oath of office until after the contest had been instituted, admitted that the applicant had on the face of the returns appeared to be elected, but alleged that no certificate of election had ever been issued, and that the opposing candidate had filed a contest with the ordinary of Banks county as provided by law. He alleged that the testimony had been duly taken by both parties to this contest, and that the case was ready for argument and hearing; that Belton lies in the counties of Hall and Banks, and that the election was held in the latter, and that the ordinary of that county had and has full and legal jurisdiction to hear and determine the contest, and that the ordinary is the proper officer to determine contested elections of this class. Respondent denied that he was an intruder, and claimed to be merely holding over until his successor could be determined. A similar proceeding was instituted by Walker, King, Oliver, Carlton, and Sumner against Quillian, Hathcock, Barrett, and Scoggins. The applicants claimed to have been elected aldermen and to have taken the oath of office. The application was similar to that of Scales, and made practically the same allegations as to the offices claimed as he made with regard to that of mayor. The respondents' answer was similar to that of the respondent in the other case, except that it appeared that no contest had been filed against Sumner, against whom there

had been no opposing candidate.          On the hearing the cases were consolidated.          The applicants put in evidence the oath of office filed by each of them on December 11, 1902.          Counsel for the respondents moved to dismiss the applications, on various grounds. In each of the cases the judge denied the leave prayed, and ordered the application dismissed.          To this judgment and order exception was taken.          The cases will be considered together, as the same questions are controlling in both.

1. The charter of Belton, as amended (see Acts 1887, p. 548), provides that the mayor and councilmen " shall hold their offices for one year and until their successors are elected and qualified."          It also declares that the certificate of the managers of election "shall be sufficient authority to the persons elected to enter on the discharge of the duties of the office to which they have been elected." Had the managers issued certificates of election, these certificates would have given the holders of them the right to enter on the discharge of the duties of the offices and to have held such offices until the determination of the contests filed by the opposing candidates.          Such certificates would have been conclusive in any collateral proceeding, and would have been prima facie evidence in even a direct proceeding which called in question the legality of the election.          Where no certificates are issued at all, neither party can show even a prima facie right to the office.          In such a case the managers may be compelled by mandamus to take action by issuing certificates, though they can not be made to issue certificates to any particular or named candidate or candidates.          Mechem, Pub. Off. § 973.          In the absence of any certificates of election and where a contest has been filed, one of the candidates can not give himself the right to the office, by taking the oath.          A candidate who, without even a prima facie right to the office, has nevertheless taken the oath, does not thereby become entitled to the office.          It might well happen that each of two opposing candidates might take the oath of office, and certainly this could not affect their relative rights. It was contended that the provision in the charter making the certificates of election sufficient authority for the holders to enter upon the discharge of the duties of the offices is not intended to make this the only sufficient evidence, and that the admitted fact that the applicants had, on the face of the returns, received a majority of the votes cast was enough.          In support of this contention

*Cutcher* v. *Crawford*, 105 *Ga.* 181, 184, was cited. That case dealt with the right of the courts to inquire into the evidence upon which the General Assembly had acted in enacting a private law, and can have no controlling application here. Possibly the showing made in the present cases would have been sufficient had there been no contest pending, but we are clear that in these cases, where no certificates of election have been issued to any one and there are contests pending, the present incumbents have the right to hold over until the contests are decided or the certificates issued. If the election managers are compelled to issue certificates of election and they issue them to the present plaintiffs in error, the latter would have the right to enter upon the discharge of the duties of the offices and hold the offices pending the contests. Or if the contests are decided in their favor, they would be entitled to the offices. But without any certificates of election, and with contests pending and undisposed of, they have no right to oust the present incumbents of the offices.

One of the candidates for council had no opposition at the election, and as to him there is no contest; but this does not give him a right to have the four defendants in error or any one of them removed from office. The four present councilmen can occupy but four of the five places, and he can claim no more than the right to the one not occupied by them. Further than this, he has joined in a proceeding with others who should not prevail therein, and there are no assignments of error which relate to him separately from the others.

2. In the preceding discussion we have assumed that the judge was correct in overruling a certain special demurrer filed in each case to the answer of the respondents. By these demurrers the applicants sought to have the allegations as to the institution and pendency of the contests before the ordinary stricken on the ground that, "if said fact existed, it was not made to appear in the answer, and that a copy of the same and all other papers therein should be attached to the pleadings, so that the court could by inspection of said record say whether or not the same was true or legal, or that the ordinary of Banks county had jurisdiction to hear and determine the same, or that the same was regular on its face." The allegations were clear and explicit and set out all of the material facts, and we are not aware of any requirement of law or pleading that one's evi-

dence need be attached to one's pleadings merely because it is in the shape of a writing. The record of the contests is not the basis and foundation of the plea in the sense that it must be set out literally therein or attached as an exhibit. If the contests filed were for any reason invalid, the applicants could have shown this on the hearing. It would be a matter for them to prove by the introduction of evidence, or to show from the evidence introduced by the respondents. The allegations of the answers as to the contests were full and specific, and there was no error in holding that they were sufficient in themselves without having copies of the record attached. *Judgment in each case affirmed. By five Justices.*