## 3634. DIAMOND POWER SPECIALTY CO. *v.* CITY OF WEST POINT.

This case is controlled by the ruling of the Supreme Court in the case of *City of Conyers* v. *Kirk*, 78 *Ga.* 480.

DECIDED SEPTEMBER 27, 1912.

Complaint; from city court of LaGrange—Judge Harwell. June 11, 1911.

*E. R. Bradfield Jr.*, for plaintiff. *B. H. Hill*, for defendant.

RUSSELL, J. The court erred in directing a verdict for the defendant. There is a remarkable similarity between the defense in this case, as well as the evidence in support of it, and the defense and the facts appearing in the case of *City of Conyers* v. *Kirk*, 78 *Ga.* 482 (3 S. E. 442). When the facts and the law of that case were analyzed by Chief Justice Bleckley, he summarized the de-

fense (as it must be construed in this case), to be twofold: (1) that no purchase was made; and (2) that if it was made, there was a breach by the plaintiff and a failure of consideration; and he held that, even if a city can not make a contract through a committee, or the chairman of that committee (and it appears that in that case, as in the case sub judice, the chairman of the committee "was the chief actor in the matter"), but the proposed action must be reported to the council in assembled meeting and there determined in a formal way and entered upon the minutes, nevertheless "a municipal corporation can make a cash contract for current supplies for lighting the streets, through its appropriate officers or committees, as effectually as by formal resolution entered on its minutes." And we may say further, upon the point that though the chairman of the light committee had no authority to purchase the blowers which are the subject-matter of this suit, the court, in our opinion, erred in directing a verdict; because the ordinances of the City of West Point provide that in case of necessity, purchases may be made by committeemen; and, necessarily, the question as to whether any proposed purchase is absolutely necessary, as related to the circumstances under which the purchase is to be made, must be determined by the jury.

It may be conceded that the chairman of the electric committee, who made this contract, was not expressly authorized to do so, but the evidence conclusively shows that he made the purchase of the blowers and that the blowers were received by the city, and installed in an electric plant owned and operated by the city, and that they were thus operated for a period of nine months. Certainly this evidence was of such character as would make it obligatory upon the city, whether its agent was authorized or not, to ratify the contract. In other words, under these facts the city would be estopped from setting up any want of authority to execute the contract, when impliedly at least it had ratified the purchase.

The fact that the contract itself was executed by a member of the city council who was chairman of the electric-light committee, and that he was afterward elected mayor, and his correspondence with the plaintiff, disclose the fact that these blowers were installed in January, 1909, in the electric plant belonging to the city and operated by the city, and thus continued to be operated for nearly a year. Certainly such facts were pertinent to the question of

ratification, regardless of the question as to whether the original purchase was authorized or not. It was the duty of the city to repudiate the contract at once, upon knowledge that it had been made, and it would be bad faith for the city to use the property for a long period of time, taking the benefit of the contract, and refuse to pay for the fruits. Municipalities as well as individuals should be held to good faith.

The question raised in the case of *City of Conyers* v. *Kirk,* supra, as to the non-liability of the city, upon the ground that the creation of a debt was involved, is not here presented, and can not be, because the record shows that the parties intended that if after thirty days trial the blowers were satisfactory, they should be paid for; if unsatisfactory, they were to be returned. The thirty days was solely for testing purposes. This made a cash transaction. If the blowers were not satisfactory, they were to be returned. The failure to return them made a debt, but the debt originated not by virtue of the contract, but by breaking it. As was said by Chief Justice Bleckley in that case, "surely there never can be and never will be any law against paying a debt which arises from default in making a cash payment at the time the debtor ought to have made it, the cash sufficient for the purpose being then in the debtor's treasury." It is not contended here that the city did not have the cash on hand to pay for the blowers, but the contention is rather that the party who purchased the blowers was not authorized to make a cash contract.

We do not mean to hold that the City of West Point is precluded from showing that there was a failure of consideration as to the blowers, but we do mean to hold the evidence in the present record does not show that they were wholly valueless; and certainly, if a jury should find that the contract was ratified, the city could not claim anything more than an abatement of the purchase-price proportionate to the degree of the blowers' failure to perform the functions guaranteed. *Judgment reversed. Pottle, J., not presiding.*