4888.  OCILLA SOUTHERN RAILROAD CO. *v.* MORTON.

1. Recovery may be had against a railway company upon an obligation signed merely by one describing himself as "president," upon proof that both parties to the contract understood that it was the obligation of the railway company, and that the company received the consideration furnished by the other party, and either authorized the execution of the contract in its behalf or ratified it thereafter.

2. The president of a corporation has not, by virtue of his office alone, authority to contract in its behalf. But knowledge of the president is imputable to the corporation. If, therefore, the president, without authority, execute in behalf of the corporation a contract, and the corporation retains and uses the consideration furnished by the other party, it can not repudiate the contract. The principal can not ratify so much of an unauthorized contract as operates in its favor and repudiate the obligation assumed in its behalf by the person claiming to act as its agent.

3. No material error was committed by the city court, and the judge of the superior court did not err in refusing to sanction the certiorari.

    DECIDED AUGUST 25, 1913.  REHEARING DENIED OCTOBER 3, 1913.

Certiorari; from Berrien superior court—Judge Thomas.  March 21, 1913.

*J. D. Lovett, Elkins & Wall, H. J. Quincey,* for plaintiff in error. *Hendricks & Christian,* contra.

POTTLE, J.  Morton sued Ocilla Southern Railroad Company upon a draft of which the following is a copy: "Nashville, Ga., March 22, 1912.  After ten days pay to the order of Hendricks & Christian, in trust for J. G. Morton, $500.00, five hundred dollars. Value received. Charge to account of J. A. J. Henderson, President.  To First National Bank, Ocilla, Ga."  At the bottom of the draft was the following notation: "Arbitration as to consideration of this check to be had in ten days."  The draft was, before suit, delivered to Morton by Hendricks & Christian, the trustees.  The petition as amended made substantially the following allegations:  The draft sued on is the obligation of the defendant railway company, being executed by its president, Henderson.  The consideration for the draft was a right of way for the railroad company through and adjacent to lands of plaintiff's wife, for

whom he was agent in the transaction. Henderson, the president of defendant company, had exclusive control of securing rights of way for the company, and by the execution and delivery of the draft it was enabled to and did construct its road through the property of plaintiff's wife, by means of which the company was enabled to complete its railway line into Nashville. After giving said draft the company, with full knowledge thereof, built its line through the property of plaintiff's wife, and thereby ratified the contract made by its president; and it continues to ratify said contract by using the line of railway. The stipulation in the draft, for arbitration, was intended by the parties to mean that an arbitration in reference to the amount to be paid by the company should be had within ten days. Plaintiff selected his arbitrator within due time, and the defendant neglected and refused to arbitrate. The draft was duly presented to the drawee bank and to Henderson, and payment was refused by both. Henderson, in giving the draft, and Morton and his wife, in receiving it, knew and believed that it was the obligation of the defendant railway company.

Demurrers to the petition as amended were overruled. At the conclusion of the evidence the court directed a verdict for the plaintiff. The defendant applied for a certiorari, and sanction of the petition was refused.

1. The main insistence of the railroad company is that the draft sued on was the individual obligation of Henderson, the addition of the word "president" being merely descriptive of the person, and that no suit upon the draft can be maintained against the company. Where one executes a contract in his own name, it is presumed to be his individual undertaking, even though such a word of description as "agent," or "president," or "administrator," or the like, be added after his signature. Civil Code, § 3570. An obligation so signed is presumptively the individual undertaking of the person signing, and it has been held that when sued upon it as an individual he is estopped to deny that it is his individual undertaking, if there is nothing in the writing to indicate that he was contracting in behalf of another. *Graham* v. *Campbell,* 56 *Ga.* 262. But it does not follow that if the person executing the instrument, in fact and within the knowledge of the person taking it, did so in behalf of another, a recovery can not be had against the

real party, on proof of these facts. The general rule and its qualification are thus stated in *Burkhalter* v. *Perry*, 127 *Ga.* 438 (56 S. E. 631, 119 Am. St. R. 343) : "If an agent make a note in his own name, and add to his signature the word 'agent,' and there is nothing on the note to indicate who is the principal, the word 'agent' will be treated as descriptio personæ, and he will be liable just as if the word 'agent' was not added. As a general rule, where a negotiable instrument is executed by an agent, with no indication on the face of the instrument who the principal is, the principal will not be liable thereon, although the agent, in executing the instrument, add the word 'agent' to his signature." In the opinion the law is thus stated : "A well-recognized exception to the general rule stated springs from the law merchant. Where a negotiable instrument is executed by an agent without sufficiently indicating on its face who the principal is, parol evidence can not be introduced to charge the principal, although he executed the instrument as agent and added the word 'agent' to his signature. This exception to the rule is based upon the reason that 'each party who takes a negotiable instrument makes his contract with the parties who appear on its face to be bound for its payment. It is a "courier without luggage," whose countenance is its passport; and in suits upon negotiable instruments no evidence is admissible to charge any person as a principal thereto, unless his name in some way is disclosed upon the instrument.' 1 Clark & Skyles on Agency, 328a; 1 Daniel, Neg. Inst. § 303. But this exception in favor of negotiable instruments itself contains an exception; and that is, as between the immediate parties to a bill or note, it may be shown by parol that the instrument was, to the knowledge of the parties, intended to be the obligation of the principal, and not of the agent, and that it was given and accepted as such. Metcalf *v.* Williams [104 U. S. 93, 26 L. ed. 665] ; Mechem on Agency, § 443." This decision is decisive of the controlling question in the case. It is averred in the petition that in making the draft Henderson was acting for his principal, the defendant railroad company, that the draft was not his individual obligation, that all parties at interest so understood it, and that the railroad company, and not Henderson, received the consideration furnished by the payee in return for the execution of the draft. These allegations bring the case squarely within the decision above cited.

2. It is claimed, however, that it does not appear that Henderson had authority to contract in behalf of the defendant corporation. The president of a corporation has not, by virtue of his office alone, power to contract in its behalf. His presumptive authority extends only to presiding and voting as a director. *Minnesota Lumber Co.* v. *Hobbs,* 122 *Ga.* 20, 24 (49 S. E. 783) ; *Swindell* v. *Bainbridge State Bank,* 3 *Ga. App.* 365, 370. (60 S. E. 13) ; *Great Southern Accident Co.* v. *Guthrie,* ante, 288 (79 S. E. 162). The petition alleges, however, that Henderson, as president, was given by the corporation exclusive control over the matter of obtaining rights of way for the railroad company, and that, by building the line through the property of the plaintiff's wife, it ratified the contract of sale. It is insisted, however, that the proof does not show that authority was conferred upon Henderson to contract with the plaintiff. Even if this be true, the evidence does show ratification of the contract. Ratification must of course be with knowledge of the facts; but the knowledge of the president, Henderson, was imputable to the company. *Johnson* v. *Ætna Ins. Co.,* 123 *Ga.* 404 (51 S. E. 339, 107 Am. St. R. 92); *Diamond Power Specialty Co.* v. *West Point,* 11 *Ga. App.* 533 (75 S. E. 903). The company was chargeable with knowledge that it had no right to take or damage the property of the plaintiff's wife without first paying just compensation. Hence it must have known that permission to use the property had been acquired, and it was bound to inquire into the terms and conditions upon which the permission had been granted. It could not by using the property ratify the act of Henderson in acquiring it, and then repudiate his promise to pay for its use. The defendant did not deny that Henderson was its president, and there was enough evidence to justify the inference that he was. The deeds objected to were not an essential part of the plaintiff's case, but their admission did the defendant no harm. No material error was committed by the city court, and the judge of the superior court did not err in refusing to sanction the petition for certiorari.

*Judgment affirmed.*