20201.   MOON MOTOR-CAR CO. *v.* SAVANNAH MOTOR-CAR CO.

DECIDED MARCH 4, 1930.

*Edwin A. Cohen, Edwin J. Feiler,* for plaintiff in error.
*Bouhan & Atkinson,* contra.

LUKE, J.   Savannah Motor-Car Company brought attachment proceedings against Moon Motor-Car Company in the city court of Savannah.   The trial judge overruled defendant's motion to dismiss the proceedings because of an alleged variation in the name of the party making the attachment affidavit and the name of the plaintiff in the attachment declaration, and overruled defendant's demurrers to said declaration, and defendant excepted.

The attachment affidavit sets out that Moon Motor-Car Company is indebted to Savannah Motor-Car Company.   The declaration

begins as follows: "Now comes the Savannah Motor-Car Company . . and files this its declaration in attachment, and says: 1st. That on September 27, 1926, and thereafter, the said Savannah Motor Car Company, which is a corporation of Chatham county, Ga., was trading and doing business in said city, under the trade name of Southern Motors Company, and on September 27, 1926, entered into a contract with the defendant" for the sale of its "Moon Diana" automobiles in Savannah, Ga., "and on said date deposited with the Moon Motor-Car Company the sum of $1,000 to insure payment of charges on cars and parts shipped to plaintiff."

"A corporation may acquire a trade or colloquial name. A contract made with the corporation in the trade or colloquial name may be sued on in its true corporate name." *McClain* v. *Georgian Co.*, 17 *Ga. App.* 648 (3) (87 S. E. 1090). "A corporation may transact business within its corporate powers in a name other than its legally authorized corporate name." *Golden's Foundry & Machine Co.* v. *Wight*, 35 *Ga. App.* 85 (1) (132 S. E. 138). See also *Saunders System Atlanta Co. Inc.* v. *Drive It Yourself Co.*, 158 *Ga.* 1 (1) (123 S. E. 132); *Eslinger* v. *Herndon*, 158 *Ga.* 823 (4), 826 (124 S. E. 169); *Farmers & Merchants Bank* v. *Farkas*, 27 *Ga. App.* 153 (107 S. E. 610).

If, as appears from the pleadings, the plaintiff was doing business under the trade name of Southern Motors Company on September 27, 1926, and contracted with Moon Motor-Car Company in that name, it certainly had the right to show these facts and bring its action in its true corporate name. The motion to dismiss was not good, and the court correctly so held.

The petition was amended several times, and the demurrers thereto are numerous. We shall attempt to give only such an outline of the amended petition as will indicate the nature of the case and illustrate our rulings upon the questions insisted upon by counsel for the plaintiff in error.

The declaration in attachment alleges:

■ (The first paragraph has been set out in the first division of this opinion. The copy of the contract attached to the petition will be referred to later.)

■ That on October 14, 1926, defendant shipped to plaintiff six cars from Atlanta, Ga., that said contract contemplated the ship-

ment of new cars; that after plaintiff had paid for three of said cars and taken them from the carrier, it discovered that they were used cars and not suitable for the purpose intended, to wit, resale by plaintiff as new cars; and that plaintiff refused to accept the three remaining cars.

■ That at the time said contract was entered into the plaintiff and defendant, acting through its agent, J. C. Borah, orally agreed "that defendant would arrange for all cars shipped to be financed by a local bank . . , the bank lending 90 per cent. of the purchase-price, and plaintiff outlaying 10 per cent. of the purchase-price," and that said agreement was confirmed by defendant as shown by certain letters and telegrams attached to the petition as Exhibits "B-1," "B-2," "B-3," and "B-4." That upon being notified that plaintiff would cancel said sales-contract unless said financing arrangement was made, defendant, on or about November 2, 1926, sent its agent Borah, who executed the original contract for defendant, back to Savannah, and that said Borah agreed that in consideration of plaintiff's not canceling said original contract (as he had a right to do under the terms thereof), such financing arrangement would be made; that, relying on said agreement, the plaintiff ordered the three cars referred to in paragraph 4 of the petition; that again, on December 9, 1926, plaintiff wired defendant that it would cancel said contract unless said financing arrangement was made; and that on February 9, 1927, plaintiff and defendant, acting through J. C. Borah, verbally canceled the original contract, said cancellation being confirmed by letters of February 10 and 16, and telegrams of February 19, 1927.

■ That subsequently to the shipment above referred to, defendant shipped plaintiff three cars, to be paid for under the financing plan set out, but that plaintiff did not accept said cars, because of defendant's failure to arrange said financing plan, and they were diverted by defendant. Plaintiff offered to take said cars, paying for them by applying said deposit of $1,000 thereon and paying the balance in cash, but that this proposition was refused by defendant. (By amendment it was alleged that "this allegation was made not to show that there was an offer of compromise, but to show good faith and cancellation of the contract.")

■ That the 5th paragraph of said original contract provides that either party may, at its option and without cause, cancel said

contract at any time, and that the same was canceled by mutual consent.

■ That defendant is indebted to plaintiff upon the following items:

Deposit made at execution original contract......$1,000.
10% agreed allowance on designated cars (acknowledged by defendant to be correct)................ 320.32.
Allowance on Moon "A" car (acknowledged by defendant as correct)........................... 70.
"Storage, freight, and bonded warehouse" (paid by plaintiff to get first cars from railroad, and acknowledged by defendant to be correct.)................ 164.42

Total, $1,554.64

Paragraph 6 was amended by adding the following thereto:

(a) The "10% deduction on carload lots, agreed allowance of $320.32," is for prepayment of 10% on cars ordered. . . This payment was made on the three cars not taken out of the railroad warehouse referred to in the second paragraph. Plaintiff is entitled to recover this amount as a matter of right, but after the cars were refused the defendant acknowledged the indebtedness and agreed to pay the same, and made a written statement to that effect on or about December 10, 1926, as shown by exhibit "D," hereto attached.

(b) The allowance of $70 on Moon car "A" is an overcharge of $70 on this car, which was paid for by the plaintiff and allowed as correct by the defendant when called to its attention.

(c) The $154.32 item is for freight charges in Atlanta, and from Atlanta to Savannah, paid by the plaintiff for the account of the defendant, in order to get the first cars from the railroad, and is acknowledged by the defendant as correct, as shown by its statement hereto attached as Exhibit "D." These cars were first shipped to Atlanta by defendant from St. Louis. The freight from Atlanta to Savannah was an overcharge against the plaintiff for which the defendant is liable, and for which it agreed to pay when the cars were received at Savannah. Exhibit "D" above referred to is a statement made by the defendant and furnished to the plaintiff. The part of the same relevant to this issue is the acknowledgment of cash received, $320.32, and the freight from Atlanta to Savannah, $164.32.

■ That the attachment was levied on six described automobiles.

■ That defendant gave an attachment bond.

■ Plaintiff prays judgment for $1,554.64, with interest thereon from date of filing suit.

By amendment the plaintiff pleaded that at the time of the cancellation of the contract there were no persons handling Moon cars under plaintiff, and that this was known to defendant, and that there were no claims or charges against plaintiff, and that if there were any, they were many times offset by the amounts defendant admitted owing plaintiff, over and above said $1,000 deposit.

It is necessary to set out so much of the contract entered into between Moon Motor-Car Company, party of the first part, acting through J. C. Borah, and "Southern Motors Company," party of the second part, on September 27, 1926, as will throw light on the points at issue.

Under the terms of said contract the second party "agrees to and hereby does purchase from first party 700 Moon Diana motorcars, shipments to start thirty days from date and to be prorated monthly." Certain discounts are set out. Second party deposits with first party $500 to insure payment of all charges on car shipments, and $500 to insure payment of all charges on parts and sundries. Paragraph 5. "Either party may at its option, with or without cause, at any time, cancel this contract by mailing to the other a written notice of its intention so to do." Party of first part, in the event of cancellation of contract, reserves option to retain in its possession any monies due second party until evidence is furnished that complete and full settlement has been made by second party with all dealers handling Moon Diana cars under party of second part. Paragraph 13. This contract remains of force "until canceled by either party in accordance with the terms of the contract." Paragraph 14. "No letter, telegram or communication passing between the parties hereto, covering any matter during this contract period . . shall be deemed a part of this agreement, nor shall it constitute a renewal of, nor an agreement to renew this contract, and shall not bind the party of the first part to renew this agreement, or to make a new agreement with the party of the second part; nor shall it have the effect of modifying or adding to this agreement unless it is distinctly stated in such letter, telegram, or communication that the same is to constitute a part of

this agreement, and is to be attached as a rider to this agreement, and is signed by the parties thereto." Paragraph 17. " . . This agreement shall not be changed or modified in any manner whatsoever, without the consent in writing, endorsed thereon by the party of the first part, signed either by said president or said general sales manager. . . "

Exhibit "B-1" is a telegram from plaintiff to Moon Motor-Car Company, dated October 25, 1926, and reading as follows: "Bank has not been satisfied in regard to your plans. Our place here and in Augusta ready. Can't you rush your negotiations with bank."

Exhibit "B-3" is a letter from Moon Motor-Car Company to plaintiff, bearing same date as above telegram. This letter reads: "We have your telegram of even date advising us that the bank is not satisfied in regard to our Finance Plan No. 2, and that we should rush negotiations to the bank."

"We certainly can not understand what more we can do than what we have done, as we are arranging with your bank to finance these two carloads on our Finance Plan No. 2, and we wrote your bank full instructions of this Finance Plan No. 2, and how to handle these two drafts, and you received copies of these letters." "We furthermore carried out the instructions of our Representative, J. C. Borah, as he is the one that negotiated with the bank to assist you in the financing of these two carloads on Plan Number 2." "Now comes your bank, which is the Citizens & Southern Bank, with a letter dated October 22, and received this a. m., stating that they are in receipt of our two letters of instructions regarding the financing of these two cars, but that they do not care to handle the proposition, as there seems to be a slight difference as to the statement made by Mr. Borah for the financing of these shipments as against our letters. Now, we have written the bank asking them to let us know by return mail wherein the difference lies. We fail to understand why this trouble exists, as our finance plans are fully printed, as you will note from the attached pamphlet, and we are sure that the bank received one of these, which should explain everything in detail, together with our letters." "We would suggest that you call upon the bank and find out just exactly what the difficulty is, and write us and see if we can not straighten the matter out so that all concerned will be satisfied."

Exhibit "B-2" is a telegram dated October 30, 1926, sent by

plaintiff to Moon Motor-Car Company. It reads: "No action from bank yet. Have other agency we can close. Losing business by delay. Will forward another 10% if will release cars so can fill orders. If you can not comply with request will have to cancel contract with you."

The following is a telegram from Moon Motor-Car Company to plaintiff, which bears date of November 1, 1926: "Regret exceedingly delay, but matters not our fault, as Citizens Bank in Savannah claims misunderstanding and wants more letters. So necessary to have Mr. Borah return to assist you to help you out of this difficulty immediately and he should arrive there in two or three days. Please have railroad store cars in warehouse so there will be no demurrage. You may depend upon our complete cooperation and assistance."

Exhibit "C-1" is a telegram dated December 9, 1926, from plaintiff to Moon Motor-Car Company. It is as follows: "We must have some action on complaints we have made in regard to cars. Borah promised to send out all Diana cars fully equipped and forward check for freight and storage advanced when we accepted cars from Atlanta, and also that cars would be financed for dealers satisfactorily for us to sell them. Unless you mail check due us and rebate us on Moon cars that you allowed dealers generally, we will be compelled to cancel our contract with you and attach cars you now have in warehouse."

Under its general demurrer, the plaintiff in error urges the same question presented by its motion to dismiss, and which has already been adjudicated adversely to the plaintiff in error.

It is next insisted by demurrer that the amendment to the petition is vague and indefinite, (a) because there is no allegation as to where said contract was verbally canceled, and (b) because copies of letters and telegrams referred to are not attached to the declaration or set out in substance. Subparagraph "(a)" is not good, and neither is "(b)," under the rule that it is not necessary to set out writings in the petition, or to attach them as exhibits, unless they constitute the cause of action or the basis of the relief prayed. Civil Code (1910), § 5541; *Steele* v. *Graves,* 160 *Ga.* 120 (3-a) (127 S. E. 465); *East Atlanta Land Co.* v. *Mower,* 138 *Ga.* 380 (2) (75 S. E. 418); *Scales* v. *Faulkner,* 118 *Ga.* 152, 155, 156 (44 S. E. 987).

238

Defendant insists by his demurrer that the "financing arrangement" set out in paragraph 3 of the petition should be stricken because it modifies and adds to the original contract in contravention of paragraphs 14 and 17 of said contract. The alleged addition to the original contract in this case is the "financing arrangement," and the consideration for such addition or change was the continuance of the original contract. It clearly appears from the letter and telegrams hereinbefore set out that the defendant acknowledged its obligation to make said financing arrangements, and that it was strenuously endeavoring to do so. It could not induce the plaintiff to continue to do business with it by promising to make such arrangements, and at the same time say "the contract prevents me from doing so." There may be a verbal change in a contract after it is executed, where such change is based upon a sufficient consideration. See Civil Code (1910), § 5794; *Collins* v. *Lester,* 16 *Ga.* 410 (1); *Wimberly* v. *Tanner,* 34 *Ga. App.* 313 (1) (129 S. E. 306). Not only did plaintiff in error waive those provisions of the contract which it invokes, but it ratified the acts of its agent, Borah. As to ratification, see Civil Code (1910), § 3591; *Bush* v. *Fourcher,* 3 *Ga. App.* 43, 49 (59 S. E. 459); *Ocilla So. Ry.* v. *Morlon,* 13 *Ga. App.* 504 (2) (79 S. E. 480).

We have decided what we deem to be the questions in the case that need special consideration, and, without prolonging this opinion, sustain the rulings of the trial judge.

*Judgment affirmed. Broyles, C. J., and Bloodworth, J., concur.*