THE CITY OF CONYERS *vs.* KIRK & COMPANY.

1. A municipal corporation can make a cash contract for current supplies, such as lamps and gasolene for lighting the streets, through its appropriate officers or committees, as effectually as by formal order or resolution entered on its minutes.
   Such a contract, if not authorized or confirmed in the mode commonly practiced, may become obligatory by implied ratification, as, by taking the fruits of the contract and enjoying them for a considerable time without notice of objection.
3. The facts of this case, taken most strongly in favor of the prevailing party, as they must be after verdict, do not show any purpose or intention to create a debt.   The debt resulted from a breach of the contract, not from the making of it.   Against paying a debt so originating; there is no constitutional impediment.
4. That the book of minutes of the corporation was excluded as evidence will not warrant a new trial, the facts which the book was offered to prove having been established by other testimony.
5. That on polling the jury, some of them, after answering that the verdict was their verdict, added that they hesitated to agree to it, and had given their assent reluctantly and with doubt, will not vitiate the finding.

April 15, 1887.

Municipal Corporations. Principal and Agent. Contracts. Debtor and Creditor. Constitutional Law. Evidence. Jury and Jurors. Verdict. Before Judge BOYNTON. Rockdale Superior Court. August Term, 1886.

Thomas Kirk & Co. brought suit against the City of Conyers on an open account for certain lamps and gasolene. The defendant pleaded the general issue; that it made no contract, and that the goods were bought upon certain representations to which they did not come up. On the trial, the evidence for the plaintiffs showed, in brief, as follows: Their agent went to see the mayor of Conyers, who referred him to the street committee, naming two members of it, and these two purchased the goods. Payment was to have been made in cash, but the city treasurer was out of town at the time. The lamps were put up and used until the barrel of oil included in the purchase was exhausted. McCord testified that he saw every member of the council before purchasing, and they told him to go ahead; also that it had been the custom of the street committee to make purchases without bringing the subject before the council, and that the trouble originated because the new lamps increased the duties of the marshal.

The evidence on behalf of the defendants tended to show that the street committee never made purchases without referring the matter to the council and having that body act; that this purchase was not authorized by the council or its members; and that the lamps were rejected at a subsequent meeting. There was conflicting evidence as to the representations made of the goods.

The jury found for the plaintiffs $57.10 principal. The defendant moved for a new trial on substantially the following grounds:

(1) Because the verdict was contrary to law and evidence.

v78-31

(2) Because the court excluded from evidence the minutes of the council, which were offered to show that there was no authority to purchase the lamps and oil, and the minutes of a later meeting showing that they were rejected.

(3) Because the verdict was not legal, in that, when the jury were polled, two of them said that they agreed to the verdict, but with doubt and reluctance.

(4) Because the court charged as follows: "Corporations transact their business by their officers and agents, duly authorized, and if the agent exceeds his authority and makes a purchase without authority, then the corporation would not be bound by the contract, unless afterwards ratified. But if you find that McCord ordered the lamps, believing he had authority, and the lamps were sent pursuant to his order, and were taken possession of by the city authorities, and were used for the public purposes for which they were intended, then you would be authorized to consider this, in connection with any other evidence on the subject, in determining whether the mayor and council ratified the purchase."

The motion was overruled, and the defendant excepted.

Geo. W. Gleaton; A. M. Helms, for plaintiff in error.

J. N. Glenn, for defendants.

Bleckley, Chief Justice.

This is a light case. The city of Conyers was lighted with kerosene. It had a street committee, consisting of two members, who arranged with Kirk & Co. to supply lamps to consume gasolene instead of kerosene; and also a barrel of gasolene to be used in the lamps. There were six lamps, costing eight dollars each; and the gasolene cost something less than ten dollars; the whole bill amounted to about $57 or $58. These lamps were put up; the marshal took charge of them and kept them lighted. They

were used for a month, and until the supply of gasolene was exhausted. Shortly after that time, the city council met, deliberated upon the question, and passed a resolution declaring that they rejected the lamps, and directing the mayor to give notice to Kirk & Co. to that effect. The notice was given either afterwards or before (I rather think, from the record, that it was given the day before). Kirk & Co. brought suit, and were met with two defences: one that the lamps and illuminating material had not been bought by the city, and the other that if bought, they did not perform up to warranty. To these pleas an allegation was added, that the lamps had been tendered back; but the defences were, (1) that no purchase had been made, and (2) that if made, there was a breach by the plaintiffs, and the consideration had therefore failed.

1. It is argued that the city could not make any contract through the street committee, or the chairman of that committee, who was the chief actor in the matter; that the regular system of contracting was to have matters examined by committees and reported to council in assembled meeting, and there determined in a formal way, and entered upon the minutes. It is insisted that these committeemen were not the agents of the city for making this contract, if they made any, and therefore the city is not bound by it. A municipal corporation can make a cash contract for current supplies, such as lamps and gasolene for lighting the streets, through its appropriate officers or committees, as effectually as by formal resolution entered on its minutes.

2. Under the evidence, we think that these committeemen had the power to represent the corporation; but if they had not, there was ratification. Such a contract, if not authorized or confirmed in the mode commonly practiced, may become obligatory by implied ratification, as, by taking the fruits of the contract and enjoying them for a considerable time without notice of objection.

3. Against this view of ratification, and all theory of im

plied contract, the counsel urged upon us, rather shyly and cautiously, the suggestion that the constitution would protect the city against this claim by virtue of the limitation which it puts upon municipal corporations touching the power to create debts.

The facts of this case, taken most strongly in favor of the prevailing party, as they must be after verdict, do not show any purpose or intention to create a debt.   The debt resulted from a breach of the contract, not from the making of it.  Against paying a debt so originating, there is no constitutional impediment.   When a cash purchase is made, there is no expectation that any debt will exist, and there was no such contemplation in this case.   If we take the evidence, as we do, most favorably for the plaintiffs' there was no intention that any debt should arise.   It was contemplated that payment should be made as soon as the articles were delivered ; and the reason indicated in the record why payment was not then in fact made was the accidental absence of the city treasurer from his office.  So that this debt (and it is a debt now) became such, not by virtue of making the contract, but by virtue of breaking the contract; and surely there never can be and never will be any law against paying a debt which arises from default in making a cash payment at the time the debtor ought to have made it, the cash sufficient for the purpose being then in the debtor's treasury.   See *Mayor, etc. of Rome vs. McWilliams et al.* 67  *Ga.*  106.

4. One ground of the motion for a new trial is, that the corporation books were excluded from the jury as evidence, books which would show that there had been no contract formally authorized by the city council, and also show the final determination of the council in regard to rejecting the lamps.   The books were probably admissible; we do not see why they were not; but the evidence came in by parol and was before the jury—both the fact that the contract was not authorized upon the books, and the fact that a resolve had passed and notice been given that the coun-

cil finally determined not to have the lamps. It follows that if an error was committed in rejecting the books, it was utterly immaterial.

5. That on polling the jury, some of them, after answering that the verdict was their verdict, said that they hesitated to agree to it, and had given their assent reluctantly and with doubt, will not vitiate the finding. It is fortunate in this world that doubt does not destroy things, because it is impossible to free the human mind from doubt. There ought to be doubt; it is good to doubt in proportion to the degree of uncertainty. A jury may arrive at their verdict by passing through grave and perplexing doubt, just as we often rule the law from this bench, after, and sometimes with, doubt the most painful and distressing. On doubt in civil cases, see *Schnell vs. Toomer*, 56 *Ga*. 170, and cases cited; *Cassidy vs. Clark*, 62 *Ga*. 411.

6. Touching the question whether the lamps came up to representation or warranty, there was evidence to justify the jury in thinking they did, and so there was evidence to uphold the verdict throughout.

Judgment affirmed.