## CITY OF HOGANSVILLE *v.* FARRELL HEATING AND PLUMBING COMPANY.

1. Under the statutes providing for the establishment of a public-school system in the City of Hogansville, for the election of a board of education and prescribing its powers and duties, such board acts as an agent of the municipality, and all property to which it holds title is held as an agent or trustee of the municipality. The first count of the petition, construed in connection with the above-mentioned statutes, set out a cause of action, and the court did not err in overruling the general demurrer.

2. The second count alleges the delivery of material for a plumbing and heating system in a public-school building in the City of Hogansville, and the installation of the same, and prays for a recovery of the value of the same, not on contract express or implied, but because of the equitable duty imposed upon the municipality to reimburse the petitioner for the reasonable value of such equipment and the installation of the same. This count failed to set out a cause of action, and the court erred in refusing to dismiss the same on general demurrer.

3. Accordingly, the judgment is affirmed in so far as it overruled the general demurrer to the first count of the petition, and reversed in so far as it overruled the demurrer to the second count.

No. 4957. FEBRUARY 11, 1926.

Equitable petition. Before Judge Roop. Troup superior court. May 16, 1925.

Farrell Heating & Plumbing Co. filed a petition against the City of Hogansville, alleging, that under its charter the defendant is authorized to conduct a system of public schools, and has done so continuously for more than ten years; that as necessary and essential to the proper conduct of such schools the municipality has the legal power to own, build, and equip schoolhouses; that in the exercise of this power the municipality acts through a board of education duly appointed and elected for said purpose; that in the performance of its powers and duties said board is an agency of the municipality, authorized to act for it in all matters pertaining to the proper management, conduct, and operation of such schools; that in 1920 said municipality, acting through its board of education, undertook to and did build a schoolhouse; that petitioner agreed with said board of education to furnish and install in said building certain plumbing, fittings,

Appeal and Error 4 C. J. p. 1181, n. 24.

Schools and School Districts 35 Cyc. p. 920, n. 75; p. 949, n. 78; p. 951, n. 91; p. 1054, n. 50; p. 1059, n. 4, 6.

and fixtures for the sum of $12,500, which sum the board of education agreed to pay; that at the time this agreement was made said board of education represented to petitioner that there was in hand available cash to pay petitioner the amount stated; that this fact was peculiarly within the knowledge of the board, and petitioner relied upon said representation and on the faith of same furnished and installed the fittings and fixtures mentioned; that payment for the same was, according to the agreement between petitioner and said board, to be made upon completion of the job and acceptance by the board; that the work was completed and accepted on March 3, 1921, and the municipality is in possession of the same and has ever since used and enjoyed it in the conduct and operation of its school system, but has paid petitioner only the sum of $5681.50, leaving due $6668.50 with interest. The petition is in two counts, both of which allege that the names of the members of the board of education are well known to the defendant; and that H. B. Darden was the chairman of said board, and as such made the representations above mentioned. The names of the other individuals who, according to the information of plaintiff constituted said board, are set out. The first count prays that petitioner have judgment against the City of Hogansville for the balance stated, with interest. The second count, in addition to the allegations above stated, sets up that said fittings and fixtures were applied to the legitimate uses of the municipality, and are now held and devoted to objects for which the municipality is authorized to raise and expend revenue; and prays: (a) that petitioner have judgment for the contract price of said material, with interest; (b) that the reasonable value of the equipment and installation be determined; (c) that an accounting be had, and credit allowed for all payments made; (d) that petitioner have judgment for the reasonable value for the equipment and installation received by the municipality and applied to its objects authorized by law, less all credits; (e) that if it should be determined that the municipality can not legally be required to pay the balance of the reasonable value or contract price of said equipment and installation, an accounting upon principles of equity be had, and judgment and decree of restitution be entered, authorizing petitioner to retake said equipment or so much of the same as may be found

necessary to liquidate the amount found, upon said accounting, to be due petitioner; petitioner to account for all payments received and the city to account for the reasonable rental value of said equipment; that upon said accounting the payments which have been made be applied to such of said equipment as is more expensive and difficult to remove, and such as may remain unpaid for be restored to petitioner. It is averred that said equipment has been used by the defendant for four years, has been more or less abused, and is not worth in the open market one half the original value; that the amount paid by defendant to petitioner is not equal to the depreciation caused by the use of said equipment; that the fair rental value of said equipment is $1000 per annum; that certain of the fixtures, designated, can be removed without material injury to the building, and, in their present condition, would have a fair market value of $1500.

The defendant demurred generally on the grounds, that the petition does not set out a legal cause of action against defendant; that, construing the complaint in conjunction with the law creating defendant and the law creating the public-school system of Hogansville, it appears that the contract set up is ultra vires, illegal and void; that in legal contemplation the suit is one against the board of school commissioners, and not against the city; that under the law that board is a legal entity in which the title to all school properties, including the property upon which the improvements constituting the subject-matter of the suit were installed, is vested; that the right to control said property is in said board; that the defendant has no title or right to the same; that said board has exclusive control of said property and right to make contracts for improvement of the same; that in the purchase of the goods sued for the board acted on its own behalf, and not in behalf of defendant; that said board is not the agent of defendant, and has no right to bind defendant by contract; that from the fact that said board has the right to contract for the building and equipment of schools, it follows that it has the right to sue and be sued; that the board, and not the defendant, should be held responsible for false representations by the board; that as title to the property is in the board and not in the defendant, it follows that defendant would not be responsible for a debt created for such property, the defendant not re-

ceiving the benefit thereof for legitimate municipal corporate purposes; that the board is limited in its expenditures for the building and equipment of school property by the law creating it, and defendant is limited in its appropriations to the school by the law creating the school system and by its charter, and any contract made by either the board or the defendant would be ultra vires and void; that said suit should be dismissed because the petition shows upon its face that the debt sued on, if a legal debt, is a debt of the board of school commissioners, and not the debt of defendant; that the suit (as to the first count) should be dismissed, because under its charter defendant had no right to create the debt sued on or make the contract alleged, and under the law creating the school system it received no benefit of said contract, and under its charter it has no right to pay even though it did contract; that (as to the second count) the facts set forth in the petition would not authorize a judgment for the contract price of said material, with interest; that the contract relied upon is ultra vires and void, and can not furnish the basis of recovery as for quantum meruit or quantum valebat, and it is therefore unnecessary to determine the value of the property furnished. The demurrer was overruled, and the exception is based upon that judgment.

The brief of counsel for plaintiff in error states "The questions of law involved are: (1) Whether the City of Hogansville is a proper party defendant to the petition of the Farrell Heating & Plumbing Company. (2) Whether the Town of Hogansville is liable upon an express or upon an implied contract to the Farrell Heating & Plumbing Company. (3) Whether the plaintiff, on an ultra vires contract, can compel an accounting and recover the excess of the property for which it could not legally contract."

. The portions of the acts under which the school system of Hogansville was organized, relied upon by plaintiff, are as follows (Acts. 1893, p. 424): "Sec. II. . . That the Town of Hogansville in the County of Troup be and is hereby authorized to organize a public-school system independent of the public-school system of the State of Georgia; that said organization shall draw its pro rata share of all educational funds raised by this State, and that the chief executive officer of such organization

shall make the same regular reports to the State School Commissioner as are required from the county commissioners of the public-school system of this State.   Sec. III. . . That the town council is hereby empowered to provide for the biennial election of a board of commissioners of said school system, to consist of five members, which said board shall supervise, regulate, and carry on said system and render the same efficient.   Said board shall receive all money drawn from the educational funds of this State, and all funds raised by taxation in said town as hereinafter provided for, and shall disburse the same to the maintenance of said school system and for the payment of the legitimate expenses of the same exclusively.   Sec. IV. . . That said town council, for the maintenance and support of said system, is hereby empowered to annually levy and collect a tax on all real and personal estate within the incorporate limits of said town, taxable by law, not to exceed one half (1/2) of one per centum for any one year; and to issue, fix, and collect the amount to be paid as tax or license by each circus for each performance, each menagerie, sideshow, sleight of hand or minstrel show, theatrical company, and other companies or individuals performing or exhibiting for pay in said town, as well as all auctioneers, itinerant traders, insurance agents, sewing-machine agents, and any other who shall sell or offer for sale in said town any article of merchandise without having first procured an annual license for selling the same in said town, and shall pay over the money thus raised to said board of commissioners for the purposes aforesaid, and shall not appropriate such money to any other purpose whatever." Acts 1895, p. 233: "Section I. . . Said commissioners shall establish two schools in said town, one for the whites and one for the colored children, and shall elect principals and such other teachers as may be necessary for said public school; prescribe salaries and the course of study; to determine the length of the scholastic terms and the time of beginning and closing said schools, and to adopt such rules and by-laws for their own government and that of the school as they may deem necessary for the purpose of carrying out this Act, not inconsistent with the constitution and laws of this State; that they shall have power to build, purchase, lease, or rent such schoolhouses or other property as may be necessary to carry on and make efficient said

schools, and the title to all school property shall be vested in said board of commissioners and their successors in office for school purposes. Sec. II. . . Said board of commissioners may, in their discretion, prescribe a matriculation fee for children who attend said schools, . . prescribe how and when the same shall be paid. Sec. IV. . . That said commissioners shall receive all moneys drawn from the educational funds of this State, and all funds raised by taxation in said town as provided for, and shall disburse the same to the maintenance of said schools and for the payment of legitimate expenses of same." The act of 1901 (Acts 1901, p. 452) modified the school laws as to the time of election of the commissioners, the term of their office, and provided that they might charge a higher matriculation fee. The act of 1919 (Acts 1919, p. 1024) provided for the election of school commissioners "in like manner as election for members of the town council of Hogansville," and for the length of time they should hold office, and limited their expenditures; for the election by them from their number of a secretary and treasurer; that certain reports should be made by him, and increased the number of commissioners to six; also that upon the death or resignation of a commissioner the board should have the power to fill the vacancy until the next annual election. Section 3 of this act provides: "That the expenditures by the said board of commissioners for all purposes, including repairs and improvements, shall be limited to the ad valorem tax collected for that purpose and the funds received from the State and County for each year." Section 6 provides: "That if from any cause the mayor and city council shall fail to hold election for members of school board at the proper time, the said school board shall call one by giving the same notice as is required for special elections for mayor and council."

*Holderness, Son & Moseley,* for plaintiff in error.

*Hall & Jones,* contra.

GILBERT, J. The City of Hogansville insists that it is not a proper party defendant. This contention is based upon the theory that the municipality was not a party to the contract entered into with Farrell Heating & Plumbing Co.; that the school board is a separate, distinct, and independent board of school commissioners in whom is vested the control, management, pos-

session, and title of all school property and school funds, not as agents of the City of Hogansville, but as a separate, distinct, and independent board created by the city and elected by the people. And from the above contentions it is argued that the school board is a corporation or quasi corporation, and may sue and be sued. It is conceded that the school board is not by express language used in the statutes made a body corporate capable of suing and being sued, but it is insisted that the right to sue and be sued is necessarily implied. If the school board is in fact a corporation, it was not necessary for the General Assembly to expressly confer upon it the power to sue and be sued. The Civil Code (1910), § 2216, provides, among other things, that "All corporations have the right to sue and be sued." The statute creating the board does provide that it may hold title "to all school property." If, however, the school board is a corporation separate and distinct from the municipal corporation of Hogansville, this provision was unnecessary, for in the same section of the code just cited it is also provided that all corporations have the right "to receive donations by gift or will, to purchase and hold such property, real or personal, as is necessary to the purpose of their organization." After all, the controlling question is whether the school board is in fact a separate entity, or whether it is merely an agency or arm of the municipal government created for the purpose of carrying out one of the functions of the municipality. From the fact that almost without exception Georgia municipalities of the present day are empowered by their charters or by special legislation to establish and maintain public schools, and that school boards are created with power similar to this board to hold title to property, to elect teachers, and do all other things necessary for the purpose of maintaining a school, we conclude that the maintenance of a public school is a function of every municipality, and a very important one. The act of 1893 in terms authorizes the municipality, that is "Town of Hogansville," to organize a public-school system. It does not authorize the board of school commissioners to establish a school system. The Town of Hogansville is also empowered by statute to provide for the election of a board of school commissioners. The act further provides and stipulates how the school board is to obtain the funds with which to maintain the school. The board

is to receive all money drawn from the educational funds of the State. But this fund alone obviously would not be sufficient to maintain the school; so that in the same statute it is provided "that all funds raised by taxation in said town as hereinafter provided for" are to be paid over to the school commissioners for the purpose of maintaining the school. The school board has no power, under the statute, to levy a tax for the support of the school. The tax is levied by the municipality. Without action by the municipality the schools, which are to be directed and conducted by the school commissioners, would cease to exist for want of funds. Thus it would appear that for this reason the school board is not independent of the municipality. Many cities also are provided by statute with other boards, such as police, parks, health, and the like. If boards of education are separate and independent corporations, why not other like boards? Why could not these boards be multiplied to the extent that every function of the city might be performed by a separate board? What, then, of the city's financial operations; what of its debt limitations? Under the constitution of this State (Civil Code (1910), § 6563) a limit is placed upon the creation of debts by municipalities. This limitation applies to the total of debts created for or by all departments of municipalities under its charter and laws applicable thereto. If the school board, as contended, is a separate and independent corporation, it could be argued, and perhaps logically maintained, that the debts of the school board could not be considered in estimating the amount of the municipal indebtedness; and furthermore, if the indebtedness of the school system could not be considered as an indebtedness of the city, it necessarily follows that there is no constitutional limitation placed upon the indebtedness that may be incurred by an independent school system such as the one under consideration. And the same could be said of debts incurred by other boards. It must be conceded that the General Assembly could incorporate an independent school system with power to sue and be sued, power to own and possess property of all kinds, having no connection with any municipality; and in such an event the constitutional limitations placed upon cities might or might not apply. Obviously the General Assembly did not do so in this instance. However, the mere fact that a board has power to sue and be

sued would not of itself negative the fact that it was a mere agency of the municipal corporation.   The legislature could provide that suits be brought against the mayor, or the chief of police, or any other officer or officers of the city, to recover on obligations or liabilities of the municipality.   If anything is clear it is that this school system was established by the town, now the City of Hogansville, and is supported by taxation levied by the municipal government of Hogansville upon the property of citizens of Hogansville.   The school system is coincident territorially with the City of Hogansville.   Clearly it was not the purpose of the General Assembly to create two corporations separate and independent, covering the same territory, with the right and power to one of them to contract debts independent of the other, to own and hold title to property independent of the other, and at the same time to depend upon the other to levy and collect taxes to provide funds with which to maintain such other corporation.   As we construe the statutes the school board, whether called a quasi corporation or simply a board, is an arm of the city government of Hogansville, created for the purpose of carrying out one of the main functions of the municipality, deriving its life-blood from the municipality, and holding the funds turned over to it and property purchased with such as a trustee of the municipality, the latter being the representative of the people of Hogansville.   The school board is an agent of the municipality, a trustee, and in all that it does within the powers conferred it represents the "City of Hogansville."   It can enter into no obligation or contract not authorized by statute.   When it does enter into a contract which it is legally authorized to do, it is an agent acting for its principal, the City of Hogansville, and the city is bound thereby.   It would serve no useful purpose to comment upon the great number of cases involving similar questions in other States.   Such decisions, as is well known, are only persuasive, and are cited and followed only where the reasoning and conclusions are deemed sound.   Many of these cases turn upon the particular wording of statutes, and are valueless unless the statutes are also considered.   Reference, therefore, will be made to only two of them.   Plaintiff in error cites Gross *v.* Portsmouth, 68 N. H. 266 (33 Atl. 256, 73 Am. St. R. 586).   This was an action arising in tort for personal injury due to a defective and

dangerous highway, made so by reason of a ridge left in the highway by workmen constructing a system of waterworks. The complainant was thrown from her carriage and injured while driving over the ridge. It was held in that case that the water commissioners had entire control of their workmen, incident to the construction of the water system; and since the municipal government had no control over the workmen, the municipality was not liable for such negligence. The case is valueless as a precedent. On the other hand, in the case of Orvis v. Park Commissioners, 88 Iowa, 674 (56 N. W. 294, 45 Am. St. R. 252), we find an interesting discussion of a case somewhat similar to the instant case. The chief difference in the facts consists in the larger powers possessed by the park commissioners in the Iowa case than by the school board in this case. The park commissioners, in addition to the powers possessed by the school board, were expressly empowered to "sue and be sued, and issue bonds for the payment of real estate." In the opinion it was said: "Aside from the selection of the commissioners, the city government, as distinct from the board, is divested of all authority in relation to the parks of the city. . . We think it is very manifest that the board is, by the act, invested with corporate authority, independent of the city government, that is, the general government of the city, while it seems to be in aid of it. But from what are we to infer that the legislature intended that these acts of the board, or the existence of the board itself, should be with reference to a new municipal corporation, instead of the one already existing? The act contains no words indicative of a purpose to create a new corporation, but it does treat of corporations already in existence. It is said by the appellees that it is to be inferred from the nature of the authority granted to the board, its powers being of a corporate nature. Why infer a legislative intent to create a new corporation merely from the nature of the powers delegated, when the exercise of those powers has precisely the same relation to, and effect on, the City of Des Moines, or other cities of that class, as it would have on the new corporation? There is not a power granted nor duty assigned under the law that can not as well be exercised or discharged in behalf of the present corporation as in behalf of those contended for under the limitations of the law as to indebtedness. It is well to

plainly say that, barring a supposed or real necessity for avoiding the constitutional inhibition as to the indebtedness of cities, there is neither motive nor reason to claim that the act ingrafts upon each of the cities of the class described another and independent corporate organization. It is true that such boards are sometimes incorporated, but in every instance coming to our notice it has been by an express provision to that effect." As an instance of express power to sue and be sued being conferred upon a board of education, attention is called to the fact that the General Assembly did expressly confer such power upon the board of education of Jesup, that act being approved on the same day that the act creating the public school system of Hogansville was approved, Dec. 12, 1893. In the Jesup act power was conferred; in the Hogansville act the power was withheld. Neither in the title nor in the body of the act creating the school commissioners of Hogansville was there any reference to the creation of a distinct corporation. Discussing that feature in the Iowa case the court said: "The title of the act expresses its subject as 'Board of Park Commissioners' in certain cities. It makes no reference to a corporation to be created by the act, and no one, to read the title, would understand that such a purpose was intended by the act. Hence, if so intended, it would be vulnerable to the constitutional provision. It can not properly be said that the board of commissioners is the subject of the legislation, if a new corporation was designed by the act, of which the board was to be the governing body. In such a case the corporation would have been the proper subject of the act, and the means of its government a matter 'properly connected therewith.' . . The existence of a municipal corporation, in the character of an organized board of persons, independent of a territory and people, could in no way subserve the purposes of the act in question. The board created by this act represents something, and that something is the City of Des Moines." We hold that the board of school commissioners of the City of Hogansville, as to all matters falling within their statutory power, acted for the municipality. It must be understood, however, at the same time that they are without power to bind the city as to any matter without the scope of their statutory authority, or by any contract within or without their statutory authority forbidden by the constitution. It is utterly un-

thinkable to credit the General Assembly with the intent of creating a separate and independent corporation with unlimited power to contract debts, with no power to levy and collect taxes within themselves with which to liquidate such indebtedness; such power might lead to extravagance and waste, and, as well, to imposition upon creditors. References above made to debts as contemplated by the constitution (Civil Code (1910), § 6563) are not to be construed as an intimation that the contract set out in this petition created a debt. The allegations show that no debt was created, and on demurrer this will be presumed to be true. The petition alleges that the agreement "was a cash transaction, and not on credit." If this is true the contract did not create a debt. "The debt resulted from a breach of the contract, not from the making of it." *City of Conyers* v. *Kirk,* 78 *Ga.* 480, 484 (3 S. E. 442). The petition set out a cause of action, and the court properly overruled the demurrer to the first count.

2. We are of the opinion that the second count in the petition was subject to the general demurrer. The plaintiff, under the allegations in the petition, either had a contract with the municipality, made through its board of education, or it did not have such a contract. It has been ruled in the first division of this opinion that the petition set out a cause of action in the first count, which is based upon an alleged valid contract. The second count seeks a recovery on quantum meruit, or the recovery of a portion of the specific property installed in the school building by the plaintiff, on the theory that such is legally permissible if the contract alleged in the first count was held invalid. If the contract is invalid, it is only so because the board of education sought to create a debt in violation of the constitutional limitation contained in the Civil Code, § 6563. If the agreement was in conflict with the constitution, the alleged contract was void; in which latter event the plaintiff could not recover. "Powers of all public officers are defined by law, and all persons must take notice thereof." Civil Code (1910), § 303. It is true that the board of education, in so far as their acts did not conflict with the constitution, were, under the allegations, in the exercise of a power expressly conferred by law; and it has been held that where public officers are acting within the powers expressly conferred

by law, the public will be estopped by their acts. *Citizens Bank of Moultrie* v. *Rockdale County,* 152 *Ga.* 711 (8), 720 (111 S. E. 434). On the other hand, the constitution above cited limits the power of municipalities to incur debts, and "What a municipal corporation was without authority to do its officers could not make lawful by ratification." *Town of Wadley* v. *Lancaster,* 124 *Ga.* 354, 356 (52 S. E. 335). And it was held in *City of Dawson* v. *Dawson Waterworks Co.,* 106 *Ga.* 696, 734 (32 S. E. 907) : "Even if a benefit has been received by one of the contracting parties from a contract which is void because prohibited by the constitution, or because contrary to public policy, the receiving of such benefit will not prevent the party receiving it from setting up against a suit to enforce the contract the defense that the contract was illegal and void. See *Covington & Macon Railroad Co.* v. *Athens,* 85 *Ga.* 367 [11 S. E. 663]." Compare Litchfield *v.* Ballou, 114 U. S. 190 (5 Sup. Ct. 820, 29 L. ed. 132), and Rose's notes. The facts alleged in this case differ from that class of cases where municipalities and counties have, without authority of law, borrowed money and executed notes therefor, and used the money to pay lawful county warrants or other contracts lawfully entered into. In such cases, while the obligations for the borrowed money were held illegal and void, the lenders, on the principles of subrogation, were allowed to recover the money actually expended in retiring the county warrants or other lawful contracts, thus placing the lender in the position of the party holding such lawful contracts. *Butts County* v. *Jackson Banking Co.,* 129 *Ga.* 807 (60 S. E. 149, 15 L. R. A. (N. S.) 567, 121 Am. St. R. 244) ; *City of Marietta* v. *Dobbins,* 150 *Ga.* 422 (2), 426 (104 S. E. 444). It follows from what has been said, that the court erred in overruling the general demurrer to the second ground of the petition. The defendant in error clearly and correctly draws the distinction between "(a) the want of authority and power to do a particular act or undertaking, and (b) the doing of such an act in a way not authorized by law." While we agree to the distinction made, under the facts pleaded in this case we do not think there is any question of mere irregularity, such as that the board of education had power to make the alleged contract but did not make it in a way authorized by law. We think the board were expressly authorized

to make the contract, and that it is either valid or invalid; valid if within the constitutional limitations, and invalid if not within that debt limitation.

3. There were a number of special demurrers to the second count; but since the effect of the above ruling is to dismiss the second count, it is unnecessary either to state or rule on these special demurrers. Accordingly, the judgment is affirmed in so far as it overruled the general demurrer to the first count of the petition, and reversed in so far as it overruled the demurrer to the second count.

*Judgment affirmed in part and reversed in part. All the Justices concur, except Russell, C. J., and Atkinson, J., who dissent from the ruling in the second division.*