## CITY OF ALBANY *et al. v.* LIPSEY *et al.*

438

No. 15182.   JUNE 8, 1945.

*Adie N. Durden,* for plaintiffs in error.
*S. B. Lippitt,* contra.

ATKINSON, Justice. (After stating the foregoing facts.) It is insisted by the City of Albany, as plaintiff in error, that the order granted by the trial judge was erroneous, in that: (a) there was a fatal variance between the allegata and probata, as the petition alleged a contract between certain individuals and the City of Albany, though the evidence showed the contract to have been executed by certain individuals and "The Board of Education of the City of Albany;" (b) that "The Board of Education of the City of Albany" is a separate and distinct entity from the City of Albany, having been created by a special act of the General Assembly (Ga. L. 1906, p. 488), and was not established by authority contained in the act of the General Assembly (Ga. L. 1923, p. 370) granting a charter to the City of Albany; and (c) that the board of educa-

tion should not have been enjoined in the instant proceedings, as the contracts in question had been executed by it, and that, before declaring the same void and restraining the carrying out of its terms, the board of education was a necessary party, though it was not made a party to the proceedings.

In approaching a solution to the question here involved, the controlling legal principle for determination is whether the board of education, in making these contracts was or was not acting as the agent for the city. It is insisted by the city and the individuals with whom the contracts were made that the board of education was not the agent of the city; that it was an independent corporation and a separate and distinct entity, having been created as such by the General Assembly (Ga. L. 1906, p. 488), and that by reason thereof it was authorized to execute the contracts with city officials and employees, and was not circumscribed or controlled by the inhibitions set forth in the charter and ordinances of the City of Albany. On the other hand, Lipsey and the other citizens who sought the injunction, and who are the defendants in error here, assert that the board of education was acting as the agent of the city in the execution of the contracts, and that the provisions of the act of 1906, establishing the board of education, in fact created the board as the agent of the city to operate and conduct its public-school system. Therefore it becomes necessary to scrutinize this act, the salient features of which are as follows:

Section 1. "After the passage of this act, the said City of Albany having recommended the same, there . . is . . established a system of public schools in and for the city, .· . to be conducted, maintained, and supported as hereinafter provided."

Sec. 2. "That there . . is hereby created a board of education for said city, . . under the corporate name of 'The Board of Education of the City of Albany,' to be vested with corporate authority in its corporate name, to sue and be sued, plead and be impleaded, to have, own, and use a corporate seal, and do all other acts relating to its corporate capacity."

Sec. 3. That the board shall consist of eleven members as follows: The mayor, the chairman of the board of county commissioners, the five members of the board of education of Dougherty County, and four citizens of Albany elected by the joint action of the city council and the county board of education.

Sec. 4. "That the officers of said board of education shall be a chairman, who shall be the mayor of the City of Albany." Other officers to be elected by the board.

Sec. 5. "That said board . . is hereby directed, authorized, and empowered to operate, conduct, and control said system of public schools, and to do and perform all necessary acts, and to devise, design, and adopt all necessary means and ways for the proper support, operation, and maintenance of the same; . . to prescribe the curriculum; . . to . . employ teachers and a superintendent, . . and to fix their salaries; to make and adopt such rules, by-laws and regulations . . as they may deem proper; to receive by purchase, gift, or otherwise all property, both real and personal, . . deemed proper or necessary; to contract and be contracted with; and to do all . . acts . . necessary for the proper support, maintenance, and operation of said system of schools."

Sec. 6 makes provision for white and colored schools, and defines what children are entitled to the benefits of the school.

Sec. 7. "That said board . . shall keep regular minutes of all its proceedings, and said minutes shall at all times be open to the inspection of the city council; . . that said board shall, at or before the beginning of each scholastic year, furnish the city council . . with a written estimate of the funds necessary for the support, operation, and maintenance . . for the ensuing school year, and at the end of each . . year . . submit to said city council a report of all amounts received and disbursed . . during said year, with such other information and recommendations as said city council may deem proper."

Sec. 8. "That the City of Albany . . is . . authorized, required, and empowered, upon the request or recommendation of said board . . to levy and collect . . a special tax . . known as the 'school tax' and paid over to said board of education, to be used for school purposes."

In the construction and application of the foregoing act of the legislature, we find no instance in previous decisions where the exact question has been adjudicated by this court; nor are the numerous decisions construing the Code of the School Law (Ga. L. 1919, p. 288) of much if any value in determining whether the act in question created the school board as the agent of the city.

Neither are decisions of other States, some of which are cited and, in part, relied upon in the excellent brief of the plaintiff in error, controlling, as they would be followed only where the conclusions are considered sound and where the wording and terms of the statute construed are similar to the act here under review.

The act specifies and limits the purposes for which the corporation is created. The maintenance of a public-school system is a governmental function. From a perusal of the terms of the act, it appears that the board of education was created to act for and in behalf of the city in operating its public schools, and is not a separate and distinct entity, operating a school system having no connection with the municipality. The act itself shows that the elements essential to its operation emanate from the city. The title to the realty is vested in the city. The city is required to levy and collect a school tax to be paid over to the board and used for school purposes. The mayor of the city shall be the chairman of the board. The minutes of the board shall at all times be open to the inspection of the city council. The board must submit to the city council each year a statement of receipts and disbursements, and such other information as the council may deem proper. While the act does not specifically provide that the board is to receive such amounts as may be due the city from other school funds, the evidence shows that for the year 1944-45 the budget for the board provided for $113,000 from the city, approximately $108,000 from the State and county, and $7000 from the Federal Government. From the terms of this act it is manifest that it was the intent of the legislature that the board of education be created with the limited purpose of conducting and maintaining the public schools of the city, thus relieving the mayor and council from the duties incident to this particular governmental function. But the provisions, that the mayor is to be the chairman of the board, that a statement of receipts and disbursements is to be submitted to the council each year, that the minutes of the board are subject to the inspection of the council, and that other information as deemed necessary by the council should be made available, together with the duty imposed upon the council to pay over the school tax to the board, overwhelmingly indicate that the board, in carrying out the terms of the act creating it, acts, not as an independent entity having no connection with the municipality, but acts for, in behalf of, and as the agent of the city.

A somewhat similar case is that of *City of Hogansville* v. *Farrell Heating &c. Co.*, 161 *Ga.* 780 (132 S. E. 436), where the city was held to be a proper party defendant and liable where the board of education refused to pay for certain equipment installed in a schoolhouse at the instance of the board. In that case it was held that the board of education was not a separate and distinct entity, it not having been created by a direct act of the legislature giving it full and complete corporate powers; but was created under an act authorizing the Town of Hogansville to organize a public-school system. It was there said (p. 786): "After all, the controlling question is whether the school board is in fact a separate entity, or whether it is merely an agency or arm of the municipal government created for the purpose of carrying out one of the functions of the municipality." Also (p. 787) it was said: "The school board has no power, under the statute, to levy a tax for the support of the school. The tax is levied by the municipality. Without action by the municipality the schools, which are to be directed and conducted by the school commissioners, would cease to exist for want of funds. Thus it would appear that for this reason the school board is not independent of the municipality."

Assuming in the instant case that the act makes the board of education a distinct corporate entity, still it does not create it as a distinct corporate entity, separate, independent of, and divorced from the municipality. By the purview of the act creating it, its duties and powers are so interlocked with the governmental functions of the city, and it is so dependent for its very existence upon funds derived from the city, that it is evident that the legislature created it for the sole purpose of carrying out one of the governmental functions of the municipality as an agent or arm of the municipal government. Being the agent of the city, the board could not exercise more latitude in the letting of contracts involving the expenditure of public funds than was provided for the city in its charter. As to the ordinance of the city designating the manner of letting city contracts, and whether the board would be controlled thereby, in view of the ruling made in reference to the charter provisions, it becomes unnecessary to determine. Accordingly, there was no variance between the allegata and probata; nor was it necessary to make the board of education a party to the

444

proceedings, as the prayer in the petition for injunction specifically covered the agents of the city.

*Judgment affirmed.* *Bell, C. J., Jenkins, P. J., Duckworth and Wyatt, JJ., concur.*