## BEVERLY *v.* BEVERLY.

No. 18018. ARGUED NOVEMBER 12, 1952—DECIDED JANUARY 12, 1953.

*Frank S. Twitty* and *W. M. Harris Jr.,* for plaintiff in error.

*Peter W. Walton* and *P. Q. Bryan,* contra.

ALMAND, Justice. Mrs. Ida Mae Beverly instituted her suit against Olin L. Beverly for a divorce, alimony for herself and their two minor children, and attorney's fees. The husband in his answer alleged that the wife had, by virtue of a written contract entered into between them on April 21, 1952, settled and satisfied all claims for alimony for herself and the children. A

copy of the alleged agreement was made a part of the answer, and in substance provided:

After reciting that the parties were then living in a state of separation and desirous of settling all their differences "prior to the filing of a suit for divorce between themselves," the parties agreed, subject to the approval of the court trying the contemplated divorce action between the parties, that the wife would have the general custody of the children, with the right of the children to visit the husband. The husband agreed to pay to the wife a stipulated sum of money each month as temporary and permanent alimony for the support of herself and the children. He also agreed to give the wife a house and lot for and during her natural life or until she remarried, with the reversionary fee in the two children, and to give the wife a Mercury automobile. In consideration of the husband's agreement, the wife agreed to accept the same in full settlement "of any and all claims that she now has or may hereafter acquire for alimony," for herself and for the support and maintenance of the minor children. She further covenanted and agreed: "That she will waive and renounce any and all her legal rights to an appearance term in the matter of the suit for divorce between the parties hereto and specifically agree that the first or appearance term of said case shall be the trial term. Said second party further covenants and agrees for the considerations expressed in this agreement to sign the statutory waiver to an appearance term when the same is presented for her signature." It was agreed that the contract would be incorporated in and become a part of the judgment and decree in the divorce case. The husband's cross-petition alleged that the wife, having entered into possession of the real estate, and having accepted the automobile and the monthly sums of money paid to her under the contract, was estopped to object to the separation agreement or to ask for temporary or permanent alimony.

On the hearing of the wife's application for temporary alimony, the trial judge, after hearing evidence, entered an order, in which he held the contract to be valid and binding on both parties as to alimony, custody of the minor children and their support; and though the court awarded the wife a stated sum as attorney's fees, it denied her prayers for alimony in support of

herself and the minor children. The wife filed a bill of exceptions assigning error on this order, and asserted that, under all the evidence, the separation was null and void "as having been made with the intention of promoting a dissolution of the marriage relation existing between said parties."

Counsel for both parties concede that the main question for decision is whether the contract between the parties of April 21, 1952, is valid against the contention that it is void as being contrary to public policy. It is apparent from the order of the trial judge that he did not deny the wife's prayer for temporary alimony as a matter of discretion, but as a matter of law. In this light, we will review his order.

■ Under prior decisions of this court, there is no question but that a husband and wife, either immediately before or after a separation, may by agreement make a valid and binding contract between themselves as to the future support of the wife and minor children, whereby the wife waives or renounces all claims for alimony temporary or permanent, for the support of herself and the minor children as against the husband. However, if one of the objects of the agreement, or a part of its consideration, is the promotion of a dissolution of the marriage relation existing between the parties, or to facilitate the grant of a divorce between them, such agreement is contrary to public policy. *Birch* v. *Anthony,* 109 *Ga.* 349 (34 S. E. 561, 77 Am. St. R. 379); *Sumner* v. *Sumner,* 121 *Ga.* 1 (3) (48 S. E. 727). Where such agreement is attacked on the ground that it was entered into in violation of public policy, a court, when called upon to approve such a contract, will closely examine the terms of the contract and the circumstances under which it was entered into, before permitting the agreement to be made the judgment of the court. Though a contract may be apparently valid on its face, where it is attacked as being contrary to public policy and thereby void, the court, as was done in this case, will hear all the facts and circumstances under which the contract was entered into. Code, § 38-503; *Dwelle* v. *Blackwood,* 106 *Ga.* 486 (1) (32 S. E. 593); *Manget Realty Co.* v. *Carolina Realty Co.,* 169 *Ga.* 495 (2a) (150 S. E. 828).

The facts and circumstances relating to the execution of the agreement between the parties are as follows: The wife testi-

fied: "An agreement was signed between us on or about the 21st day of April. The circumstances under which that agreement was signed was because he said he didn't care anything else about me and he wanted a divorce. I didn't have anywhere to go, didn't have any money. That's the reason I signed that agreement so I would have a place to go. I wanted that house more than anything else. The agreement was signed because he wanted a divorce, he said he didn't love me any more, he never intended to live with me any more. . . He said he didn't want me to file suit, so told Mr. Cranford and Mr. Walton. Mr. Cranford suggested that I should file suit. Well, the only reason he didn't want me to file suit, and his only reason was if I filed it I wouldn't go through with it. That was before the agreement was signed. He said he was going to file the suit. I was supposed to have agreed for him to have a divorce, after he filed suit, and I was not going to contest it. That was understood at the time I signed the agreement. . . Yes, I signed the agreement freely and voluntarily, but why I did I didn't have any money, and I had to go somewhere. . . He has been telling me he wanted a divorce off and on for about a year."

As to the execution of the contract, the husband testified: "I heard her testify about this agreement, that it was on account of the fact that we were getting a divorce. I said that I had better file the suit for divorce, because I would go through with it. It was suggested by her attorney that she file the suit, and I made the statement that I expected I had better file it because she might [not] go through with it." Q. "As a matter of fact, this agreement was signed in contemplation of that divorce being granted?" A. "Well, we have always talked ever since I'd been dissatisfied with her that we would come to some agreement and get it over with. In other words, I would not have signed this agreement if she hadn't agreed to a divorce. I insisted on filing the divorce because I was afraid she wouldn't go through with it. I just wanted to get loose from her, I wanted to get it over with, get her satisfied and everything. I wouldn't trust her to file the suit, and I put it in the agreement that I would file the suit. I wouldn't have signed the agreement if I wasn't going to file the suit. She was to make no defense to

the divorce suit. That's the way I wanted it. She was going to sign the papers acknowledging service and let me have a divorce."

Judge Robert H. Cranford, who was attorney for the wife at the time the agreement was executed, testified by affidavit as follows: "On or about the 21st of April, 1952, he represented Mrs. Ida Mae Beverly in connection with an agreement with her husband, Olin L. Beverly. That on said date both Mr. and Mrs. Beverly, your deponent and Peter W. Walton, attorney for Mr. Beverly, had a conference at which time the contents of the agreement, dated April 21st, 1952, were discussed by said parties. During said discussion, your deponent suggested that it would be best for Mrs. Beverly to file the suit for divorce instead of Mr. Beverly filing the same, and at that time and before said agreement was executed, Mr. Beverly stated that he would not agree for Mrs. Beverly to file the suit for divorce because she would not go through with it, and that he wanted to file the suit for divorce. As he insisted on doing so, Mrs. Beverly finally agreed to allow him to file his suit, and agreed that no defense would be made, and that her husband would be allowed to obtain divorce at the next term of the Superior Court of Colquitt County, Georgia, and Mrs. Beverly further agreed that she would sign such papers as would be necessary making the first term, the trial term of said divorce proceeding; all of which is generally set out in paragraph six of the agreement. That after the discussion took place, said agreement was executed by both parties in my presence."

In *Powers* v. *Powers,* 158 *Ga.* 251 (123 S. E. 220), a husband sought to defeat the payment of temporary alimony on the ground that the wife had agreed in writing to a settlement of alimony. It was agreed between the parties that "neither will defend any suit for divorce that either of said parties may prosecute." This agreement was held to be contrary to public policy and void. In *Don* v. *Don,* 158 *Ga.* 254 (123 S. E. 268), while a suit for divorce brought by a husband against a wife was pending, the husband entered into an oral agreement to pay his wife a stipulated sum of money as alimony, and there being evidence that it was a part of the contract that the wife would make no appearance at the trial, the contract was held to be

void as contrary to public policy. In *Ozmore v. Ozmore,* 179 *Ga.* 339 (3) (175 S. E. 789), this court held that the trial court did not err in excluding from evidence in the trial of a wife's action for alimony a written agreement between the husband and the wife, whereby she agreed to file a suit for divorce and the husband agreed not to contest the action. This court ruled that this agreement was null and void as contrary to public policy. In *Law v. Law,* 186 *Ga.* 113 (197 S. E. 272), a husband in his action for a divorce set out in his petition a copy of an alleged agreement between himself and his wife purporting to settle all questions of alimony. In this agreement, the parties agreed that "either may at any time bring his or her action for divorce, and the same will not be contested." The wife attacked the contract as being invalid and illegal as being contrary to public policy. The trial court sustained the validity of the contract and denied the prayer of the wife for temporary alimony. It was held that the purported contract settling alimony was void and constituted no bar to the right of the wife to alimony, and that the trial court erred in holding to the contrary.

It appears without conflict from the evidence that, before the separation agreement was signed, it was agreed by both parties that the husband was to bring the action for a divorce and that the wife would not contest the same, but would expedite the action by agreeing to a trial at the appearance term, and this (last-stated) agreement is expressed in the written contract. The promise of the wife not to contest the husband's divorce action was a part of the consideration of the husband's promise to pay alimony for the support of the wife and minor children, and one condition under which the husband signed the agreement was that the wife would make no defense to the divorce suit. The contract which attempted to settle the question of alimony and support of the minor children was clearly void as being contrary to public policy.

■ The husband insists that because the wife has gone into possession of the house and lot deeded to her under the agreement, and accepted the automobile and received monthly payments under the contract, she is now estopped to insist that the contract is void. This contention cannot be sustained. The

agreement purporting to settle alimony, being void as contrary to public policy, cannot be rendered valid by estoppel. Though the wife is a party to the contract, she is not seeking the aid of the court to uphold the same, or to rescind it. The husband is attempting to bar the wife's right to ask the court for the grant of alimony, by pleading the contract, and the wife in meeting this plea can assert the invalidity of the contract as being contrary to public policy without first offering to restore to the husband the benefits she has already received under the contract. See, in this connection, *City Council of Dawson* v. *Dawson Waterworks Co.,* 106 *Ga.* 696 (6), 734 (32 S. E. 907); *City of Hogansville* v. *Farrell Heating & Plumbing Co.,* 161 *Ga.* 780, 792 (132 S. E. 436).

The trial judge erred in holding the contract to be valid, thus preventing his determining whether the wife was entitled to alimony for the support of herself and the minor children.

*Judgment reversed. All the Justices concur, except Atkinson, P. J., not participating.*